No. 25-135

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

# IN RE THE BOEING COMPANY SECURITIES LITIGATION

On Petition for Permission to Appeal from the United States District Court for the Eastern District of Virginia, Alexandria Division
No. 1:24-cv-00151
The Honorable Leonie M. Brinkema

# ANSWER IN OPPOSITION TO DEFENDANTS' PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

ROBBINS GELLER RUDMAN
& DOWD LLP
ANDREW S. LOVE
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
– and –
CHAD JOHNSON
JONATHAN ZWEIG
DESIREE CUMMINGS
420 Lexington Ave., Suite 1832
New York, NY 10170
Telephone: 212/432-5100

LABATON KELLER SUCHAROW LLP
CAROL C. VILLEGAS
CHRISTINE M. FOX
JAKE BISSELL-LINSK
140 Broadway
New York, NY 10005
Telephone: 212/907-0700

*Lead Counsel for Lead Plaintiffs*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 5

III. ARGUMENT ........ 10

A. Plaintiffs established that damages can be assessed classwide using a common methodology ........ 10

B. The district court properly exercised its discretion in finding a fit between Plaintiffs' liability theory and damages methodology ........ 10

C. Defendants' challenges to Plaintiffs' damages methodology are premature and completely meritless ........ 14

D. This case does not present a question remotely similar to *Deloitte* ........ 20

E. The class certification order will not effectively terminate the litigation ........ 21

IV. CONCLUSION ........ 23



4905-1875-2815.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)....15

*Angell v. GEICO Advantage Ins. Co.*,
67 F.4th 727 (5th Cir. 2023)....14

*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*,
747 F.3d 489 (7th Cir. 2014)....22, 23

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005)....22

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*,
322 F. Supp. 3d 676 (D. Md. 2018)....19

*City of Mia. Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*,
2018 WL 4931543 (N.D. Cal. Oct. 11, 2018)....13

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)....*passim*

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)....15

*Forsythe v. Teva Pharm. Indus. Ltd*,
102 F.4th 152 (3d Cir. 2024)....11

*Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*,
2023 WL 7285167 (E.D. Pa. Nov. 3, 2023), *leave to appeal denied sub nom. Forsythe v. Teva Pharm. Indus. Ltd.*, 102 F.4th 152 (3d Cir. 2024)....20

*In re Acadia Healthcare Co., Inc.*,
2023 WL 3620955 (6th Cir. May 23, 2023)....22



4905-1875-2815.v1

**Page**

*In re Nexium Antitrust Litig.*,
777 F.3d 9 (1st Cir. 2015)....................14

*In re NII Holdings, Inc. Sec. Litig.*,
311 F.R.D. 401 (E.D. Va. 2015)....................12, 13

*In re Urethane Antitrust Litig.*,
768 F.3d 1245 (10th Cir. 2014)....................15

*In re VHS of Michigan, Inc.*,
601 F. App'x. 342 (6th Cir. 2015)....................15

*Junge v. Geron Corp.*,
2022 WL 1002446 (N.D. Cal. Apr. 2, 2022)....................20

*Kleen Prods. LLC v. Int'l Paper C.*,
831 F.3d 919 (7th Cir. 2016)....................15

*Leyva v. Medline Inds. Inc.*,
716 F.3d 510 (9th Cir. 2013)....................15

*Lienhart v. Dryvit Sys., Inc.*,
255 F.3d 138 (4th Cir. 2001)....................1, 3, 23

*Ludlow v. BP, P.L.C.*
800 F.3d 674 (5th Cir. 2015)....................2, 18, 19

*Lytle v. Nutramax Lab'ys, Inc.*,
114 F.4th 1011 (9th Cir. 2024)....................22

*Meek v. Kan. City Life Ins. Co.*,
126 F.4th 577 (8th Cir. 2025)....................15

*National ATM Council, Inc. v. Visa Inc.*,
2023 WL 4743013 (D.C. Cir. July 25, 2023)....................15

*Schultz v. Emory Univ.*,
2024 WL 4534428 (11th Cir. Oct. 21, 2024)....................15

**Page**

*Univ. of P.R. Ret. Sys. v. Lannett Co.*,
2023 WL 2985120 (3d Cir. Apr. 18, 2023) ........................................................14

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017) ....................................................................11, 13, 14

*Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.*,
935 F.3d 496 (6th Cir. 2019) ..........................................................................12

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
Rule 23(a)...................................................................................................3, 8
Rule 23(b) ...............................................................................................3, 14
Rule 23(b)(3)...........................................................................................8, 11

## I. INTRODUCTION

As this Court has long acknowledged, district courts possess "broad discretion in deciding whether to certify a class." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001).[1] The district court here duly exercised that discretion. After careful consideration of the evidence, including expert reports and depositions, briefing, and argument, and applying well-established precedent, the court certified a class action while limiting the scope of the class and narrowing the class period.

This Court exercises "careful and sparing use" of Federal Rules of Civil Procedure 23(f) in granting interlocutory review of class certification rulings. *Id.* at 145. None of the factors typically used to evaluate 23(f) petitions are satisfied here.

First, this is certainly not a "death knell" situation given that denial of review in this case, which is nearing the end of discovery, will not terminate the litigation. On the district court's efficient schedule, Plaintiffs' expert merits damages and loss causation report has been served, eclipsing Defendants' concerns about Plaintiffs' class certification damages methodology. If Defendants have concerns about Plaintiffs' expert's methodology, they can—and surely will— raise those challenges promptly below. In fact, the gravamen of Defendants' petition is an attempt to litigate

[1] Unless otherwise noted, all emphasis is added, and citations and internal quotation marks are omitted.

merits issues at the class-certification stage, and thus does nothing but raise issues that will be properly litigated at the merits stage below.

Second, despite strained efforts to imply this case raises a legal question of general importance, Defendants merely oscillate between repeating routine misinterpretations of *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), and raising misplaced narrow fact arguments that could only be relevant to this case. Defendants' core argument—that *Comcast* requires plaintiffs to provide greater detail concerning damages models at the class certification stage—has been repeatedly rejected. Defendants have not identified a single Circuit or Supreme Court decision endorsing their view of *Comcast*. They rely on *Ludlow v. BP, P.L.C.* 800 F.3d 674 (5th Cir. 2015), but that case addressed a novel damages method not applicable here. In contrast, every appellate court that has addressed this issue has rejected Defendants' position. *See supra* at n.3.

This is clearly not a situation where a generally applicable legal issue is novel or unsettled such that interlocutory review is warranted. Indeed, the specific arguments advanced by Defendants are intensely fact-bound and poor vehicles for establishing law on broad legal issues.

Specifically, Defendants argued below that Plaintiffs' damages model fails to account for changed circumstances due to Boeing entering a Deferred Prosecution

Agreement ("DPA") on January 7, 2021. This argument is moot because the district court trimmed the Class Period from beginning on September 30, 2019 to beginning on January 7, 2021—when the DPA was executed. It does not even present a legal issue that remains relevant to *this case*, let alone a broadly applicable legal issue warranting interlocutory review. Defendants' other leading argument was that Plaintiffs' damages model does not account for how the repetition of misstatements from the start of the proposed Class Period on September 30, 2019, bolstered their materiality over time. This argument (which mischaracterizes Plaintiffs' theory, as discussed below) also is largely mooted by the district court's decision that the Class Period would not begin until January 7, 2021.

Third, Defendants do not come close to showing that the "district court's certification decision is manifestly erroneous and virtually certain to be reversed on appeal." *Lienhart*, 255 F.3d at 145. Defendants do not dispute the district court's determination that all four elements of Rule 23(a) (numerosity, commonality, typicality, adequacy) and one of the two elements of Rule 23(b) (superiority) were met. Their only challenge is to predominance and the related finding that Plaintiffs' out-of-pocket damages methodology is consistent with Plaintiffs' theory of liability. But that challenge is seriously undermined by the fact that their primary arguments

made to the district court (even if they could be valid at this pre-merits stage) have been rendered moot by the district court's class certification ruling, as just discussed.

More fundamentally, Defendants misunderstand *Comcast*. Damages methodologies are presented at the class certification stage merely to show that individualized issues will not predominate. The standard out-of-pocket damages model proposed here turns on assessing the artificial inflation in Boeing's stock price due to the fraud and the reduction in inflation following corrective events. That inquiry does not turn on *any* individualized issues; it turns on economic assessment of the factors influencing Boeing's stock, not the particularities of any specific investor. Defendants do not identify any predominating individualized issue.

*Comcast* addresses a specific concern: whether the damages methodology fits the theory of liability. Here, the theory of liability is that Boeing's stock price was artificially inflated by Defendants' fraud, and the damages methodology is entirely attuned to that theory of liability. The details of *measuring* that inflation are merits issues. Whether or not a merits stage loss causation analysis succeeds in reasonably measuring inflation due to the fraud is an entirely distinct question from whether the out-of-pocket method fits the theory of liability.

Finally, Defendants' longshot attempt to disrupt this litigation by somehow tying it to the entirely distinct issues in *In re Deloitte & Touche LLP*, No. 24-258 (4th

Cir. Feb. 13, 2025), should be rejected. The potential *Comcast* issues there are tied to the unique status of Deloitte's role (as outsider auditor) contributing to an alleged fraud perpetrated by SCANA. The question of whether the out-of-pocket method, as articulated there, can measure damages due to Deloitte's alleged misconduct in furtherance of a multi-party fraud has no bearing on the general requirements of *Comcast* Defendants seek to raise here.

In short, Defendants utterly fail to provide a basis for review.

## II. STATEMENT OF FACTS

Throughout the Class Period, Defendants misrepresented the most important aspect of Boeing's business: the safety of its commercial airplane manufacturing.

In October 2018 and March 2019, two Boeing 737 MAX airplanes crashed (the "Crashes"), killing everyone on board both flights. ECF-43-¶¶54, 57. The Crashes implicated critical defects in Boeing's Maneuvering Characteristics Augmentation System, which Boeing had concealed from pilots and lied about to the Federal Aviation Administration ("FAA"). *Id.* ¶¶55-56, 60-61. Multiple government investigations concluded that Boeing was at fault for the Crashes. *Id.* ¶58. Boeing was criminally charged with defrauding the FAA and entered into a DPA with the DOJ requiring, among other things, enhanced compliance reporting. *Id.* ¶¶81-85.

Boeing also paid $200 million to settle SEC charges for "misleading investors about the safety of the 737 MAX." *Id*. ¶¶87-92.

In the wake of these two devastating crashes, Defendants assured investors that Boeing had changed its ways by prioritizing safety, eliminating specific unsafe manufacturing practices, and enabling employees to raise concerns without fear of retaliation. Defendants claimed, for example, that safety was Boeing's "highest priority," that "[s]afety dominates Boeing," and that Boeing "do[es] not compromise these values for cost or schedule." *Id.* ¶¶147-163.

Defendants also asserted that Boeing did not tolerate retaliation against employees and "encourage[d] people to speak up" about safety concerns. *Id.* ¶¶164-172. Defendants further claimed that Boeing was eliminating "traveled work," which involves moving airplanes down the line or between factories before work has been completed. *Id.* ¶¶134-135, 163. Traveled work is "inherently unsafe" and "creates opportunities for failure." *Id.* ¶¶222, 232. Defendants also touted Boeing's airplane production rate and asserted that Boeing was not relying on traveled work to increase that rate. *Id.* ¶¶173-176, 690, 856-857. Defendants promised "a renewed commitment to full transparency," including "proactive communication" with its regulators. *Id.* ¶¶180-186.

In reality, however, Boeing continued to prioritize short term financial performance at the expense of its safety practices. Defendants' many misstatements artificially inflated and artificially maintained the price of Boeing's stock by concealing that dangerous reality. The truth about Boeing's safety and quality deficiencies began to emerge on January 5, 2024, when a door plug blew off an Alaska Airlines 737 MAX, requiring an emergency landing. *Id.* ¶365. The incident resulted from Boeing's failure to install door plug bolts due to unsafe traveled work performed at Boeing's factory. *Id.* ¶¶232, 372, 440. Following the incident, the National Transportation Safety Board announced an investigation, the FAA temporarily grounded Boeing's 737 MAX 9 jets, and Boeing's stock plummeted $20 per share. *Id.* ¶¶366-371.

This case was initiated by Rhode Island on January 30, 2024. ECF-1. On April 22, 2024, Rhode Island and the IBT Pension Fund were appointed Lead Plaintiffs. ECF-26. On May 22, 2024, Plaintiffs filed the operative complaint. ECF-43. On September 6, 2024, the district court denied Defendants' motion to dismiss. ECF-62; ECF-63.

Plaintiffs moved to certify a class, pursuant to Rule 23, of similarly situated investors. Specifically, Plaintiffs moved to certify a class consisting of:

> All persons and entities who or which, during the period from September 30, 2019 to May 14, 2024, inclusive (the "Class Period"), purchased or

> otherwise acquired publicly-traded Boeing common stock (NYSE:BA) or exchange-traded Boeing call options, or wrote exchange-traded Boeing put options, and were damaged thereby.

ECF-104 at 2.

Following extensive briefing, expert reports, expert deposition testimony, and other evidence, the district court granted class certification, while reducing the scope of the class and the length of the Class Period.

The district court found that Plaintiffs met each of the requirements of Rule 23(a) and 23(b)(3) for certifying a class. Defendants did not dispute, and the court agreed, that Plaintiffs met the four requisite elements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Petitioner's Appendix ("App.") 1-2.

The court further held that Plaintiffs satisfied Rule 23(b)(3)'s requirements that: (1) common questions of law or fact predominate over individual questions; and (2) a class action is superior to alternative methods of resolving the dispute. *Id.* at 2. With regard to predominance, the court recognized that "[e]ach class member's claims are based on the same alleged misstatements and omissions by defendants, as well as the same sort of monetary damages resulting from a decline in Boeing's stock price from an allegedly inflated level." *Id.* The court noted the applicability of the "'fraud on the market'" presumption for reliance, *id.*, an issue not in dispute here.

Defendants, as they do here, contended that predominance was not met because of the purported insufficiency of the "out-of-pocket" methodology for calculating damages. But as the district court stated, "[t]he out-of-pocket methodology for calculating per-share inflation is, however, 'widely accepted as the traditional measure of damages for Rule 10b-5 actions' and fits plaintiffs' theory of liability: that investors were damaged by purchasing Boeing stock at inflated prices due to defendants' fraud." *Id.* at 3. The court further recognized that Plaintiffs were not required "to conduct detailed damages modeling to meet Rule 23's predominance requirement at the class certification stage." *Id.*

The district court did narrow the scope of the class and Class Period. Agreeing with Defendants, it held that "plaintiffs should not be permitted to expand the class to include options holders." *Id.* at 4. And it reduced the start of the Class Period from September 30, 2019 to January 7, 2021, and the end of the Class Period from May 14, 2024 to January 8, 2014. *Id.* at 4-5. By shortening the beginning of the Class Period, the court rendered irrelevant Defendants' primary challenges to Plaintiffs' expert's methodology below—that (1) it failed to account for price inflation for the initial statements at the start of the proposed Class Period; and (2) it failed to account for the change of circumstances when the DPA was entered into on January 7, 2021.

## III. ARGUMENT

### A. Plaintiffs established that damages can be assessed classwide using a common methodology

*Comcast* holds that at the class certification stage plaintiffs must merely identify a common methodology for the calculation of damages that matches their theory of liability, and they need not fully elaborate on the intricacies of the methodology: "Calculations need not be exact, but at the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability case.'" 569 U.S. at 35. That is precisely what Plaintiffs did here. Their proposed out-of-pocket methodology is indisputably the gold standard for calculating damages in securities class actions. As discussed in detail below, Plaintiffs' expert did not merely "recite" a "generally applicable rule for measuring damages" (Defendants' Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f) ("23(f) Pet.") at 5) but explained a methodology that is consistent with Plaintiffs' theory of liability. Defendants attempt to distort *Comcast*'s holding to demand a merits-stage determination goes far beyond what Rule 23 requires.

### B. The district court properly exercised its discretion in finding a fit between Plaintiffs' liability theory and damages methodology

*Comcast* addresses a precisely defined concern: whether plaintiffs' damages methodology is consistent with their theory of liability. This inquiry bars attempts to

cheat around Rule 23(b)(3)'s predominance requirement. Many non-securities classes face significant individual damages issues. One could potentially avoid these issues by proposing a damages methodology that, while unrelated to the claims at issue, is uniformly applied. *Comcast* forecloses that possibility by requiring consistency between the damages methodology and liability theory.

In *Comcast*, only one of plaintiffs' four theories of antitrust liability was allowed to proceed. 569 U.S. at 31. Plaintiffs' proposed damages methodology sought to assess the total harm caused by Comcast's anticompetitive conduct, even though the damages from the one remaining theory would be lower and varied among class members. *Id*. at 37. This explicit mismatch is what *Comcast* found improper. *Id*. at 36 (finding damages model "failed to measure damages resulting from the particular antitrust injury on which petitioners' liability ... is premised").

Thus, "*Comcast* poses a low bar to class certification." *Forsythe v. Teva Pharm. Indus. Ltd*, 102 F.4th 152, 159 (3d Cir. 2024). As the Second Circuit explained, *Comcast* precluded class certification "only ... because the sole theory of liability that the district court determined was common in that antitrust action ... was a theory of liability that the plaintiffs' model indisputably failed to measure when determining the damages for that injury." *Waggoner v. Barclays PLC*, 875 F.3d 79, 105-06 (2d Cir. 2017). It thus "merely held that 'a model purporting to serve as

evidence of damages in [a] class action must measure only those damages attributable to [the liability] theory.'" *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 413 (E.D. Va. 2015); *see Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 510 (6th Cir. 2019) ("[A]ny model supporting a plaintiff's damages case must be consistent with its liability case.").

Plaintiffs' expert, Chad Coffman, explained that damages will be calculated based on the "standard and well accepted" "'out-of-pocket' method," where damages are equal to "artificial inflation per share at the time of purchase minus the artificial inflation per share at the time of sale." ECF-105-1-¶96; *see id.* ¶¶96-100 (full methodology). This method is perfectly consistent with Plaintiffs' liability theory: Defendants' fraud inflated Boeing's stock price, causing injury to investors as the truth was revealed and inflation was removed. *Id.*

While assessing the artificial inflation throughout the Class Period is a merits issue, Mr. Coffman explained that it can be assessed using an event study, subject to any appropriate classwide adjustments. This explanation is not provided at the class certification stage because it is necessary as *proof* that damages will be successfully proven, but because it explains that the techniques for measuring inflation are based on economic analysis of the factors influencing Boeing's stock price, which does not require any individualized inquiry into specific class members. *Id.* ¶¶98-100.

The district court understood that the out-of-pocket methodology is consistent with Plaintiffs' theory of liability, recognizing that it is "'widely accepted as the traditional measure of damages for Rule 10b-5 actions' and fits plaintiffs' theory of liability: that investors were damaged by purchasing Boeing stock at inflated prices due to defendants' fraud." App. 3, quoting *NII*, 311 F.R.D. at 413-14. This finding is consistent with *Comcast* and well within the court's discretion. *See, e.g.*, *Waggoner*, 875 F.3d at 106 (holding that the out-of-pocket method is "'directly linked with [the] underlying theory of classwide liability ... and is therefore in accord with ... *Comcast*'"). That the out-of-pocket method fits most securities cases does not weigh against class treatment; on the contrary it merely reflects "that securities fraud cases fit Rule 23 'like a glove.'" *City of Mia. Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 2018 WL 4931543, at *3 (N.D. Cal. Oct. 11, 2018).[2]

---

[2] The amicus brief of former SEC officials and law professors concedes that the out-of-pocket methodology is acceptable for traditional securities fraud cases. Amicus Curiae Brief of Former SEC Officials and Law Professors ("SEC Brief") at 2 ("And, in a plain-vanilla securities fraud case premised on a financial statement subsequently revealed to be false by a 'corrective disclosure,' that may be the correct outcome."). As the district court appropriately determined, this is precisely such a case. App. 3; *see also* ECF-115-2 at 83:2-8 (Mr. Coffman's deposition testimony that the out-of-pocket method is appropriate where, as here, "the allegation is that purchasers paid an inflated price as a result of misstatements and/or omissions.").

### C. Defendants' challenges to Plaintiffs' damages methodology are premature and completely meritless

Unable to dispute the out-of-pocket method as genuinely inconsistent with Plaintiffs' liability theory, Defendants focus on the supposed difficulty of measuring inflation. Defendants' arguments are a complete non-sequitur: whether inflation is difficult to prove has no bearing on whether measuring damages based on inflation is (a) consistent with Plaintiffs' theory of liability under *Comcast*, or (b) a task that will implicate predominating individualized issues under Rule 23(b).

That leap in logic is at the heart of Defendants' petition. They seek to invent an additional class certification stage burden for Plaintiffs that requires probing the merits of whether Plaintiffs have shown that they *will* prove damages. Such a rule would be a vague moving target creating endless fodder for dispute concerning how close to proving loss causation Plaintiffs must come at the class certification stage. Moreover, it would be entirely divorced from the holding of *Comcast*, as discussed above, and at odds with how appellate courts[3] and district courts (*see* ECF-130-1)

---

3 *In re Nexium Antitrust Litig.*, 777 F.3d 9, 23 (1st Cir. 2015) ("Defendants' reliance on *Comcast* is … misdirected" as it only requires "the damages calculation must reflect the liability theory"); *Waggoner*, 875 F.3d at 106 (rejecting argument that plaintiff must explain how inflation will be modeled because "*Comcast* does not suggest that damage calculations must be so precise at this juncture"); *Univ. of P.R. Ret. Sys. v. Lannett Co.*, 2023 WL 2985120, at *4 (3d Cir. Apr. 18, 2023) (rejecting *Comcast* argument because out-of-pocket methodology was "tied to a single theory of liability"); *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 740 (5th Cir. 2023)

have assessed this issue. Most importantly, Defendants' position is directly inconsistent with Supreme Court precedent that the likelihood of proving one's merits case is irrelevant to class certification and that Plaintiffs need not "show loss causation" at the class certification stage. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011).

Moreover, Defendants fail to even establish the basic predicate of their argument—that measuring inflation will be particularly difficult here. Instead, they offer misplaced, highly factual, and case-specific arguments that merely underscore

---

(rejecting *Comcast* argument because "Plaintiffs articulate[d] a reasonably ascertainable formula" for damages); *In re VHS of Michigan, Inc.*, 601 F. App'x. 342, 343 (6th Cir. 2015) ("a generic damages model is permissible after *Comcast*" if it "stem[s] from the theory of liability"); *Kleen Prods. LLC v. Int'l Paper C.*, 831 F.3d 919, 929 (7th Cir. 2016) ("*Comcast* insists that the damages theory must correspond to the theory of liability, but that is all *Comcast* said"); *Meek v. Kan. City Life Ins. Co.*, 126 F.4th 577, 584 (8th Cir. 2025) (*Comcast* satisfied where Plaintiff "provided a way of measuring [damages] 'on a classwide basis'"); *Leyva v. Medline Inds. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (*Comcast* only requires that plaintiffs "be able to show that their damages stemmed from the defendant's actions that created the legal liability"); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1259 (10th Cir. 2014) (recognizing *Comcast* is concerned with the "'fit' between the plaintiffs' theory of liability ... and ... damages" and rejecting *Comcast* argument where that "problem [is] absent"); *Schultz v. Emory Univ.*, 2024 WL 4534428 (11th Cir. Oct. 21, 2024) ("skeletal model[]" for damages was "sufficient" and "can be fleshed out into actual class-wide damages calculations" at trial); *National ATM Council, Inc. v. Visa Inc.*, 2023 WL 4743013, at *6, *10-*11 (D.C. Cir. July 25, 2023) (rejecting *Comcast* argument and distinguishing between burdens at class certification inquires and "burden of prevailing on liability and damages at trial").

that this case would be a poor vehicle for establishing any appellate-level law concerning *Comcast's* general application.

First, Defendants argue that "Mr. Coffman did not explain how he would account for the evolving circumstances at Boeing, and in the aviation industry generally, between 2021 and 2024." 23(f) Pet. at 17. Defendants have shifted the goalposts. Below, Defendants argued that the methodology was inadequate because of the "'dramatically altered state of affairs at Boeing'" in the period before the DPA was entered into in January 2021. ECF-115 at 4, 7-9, 15-18. Defendants' expert opined that "'it is implausible to suggest that investors would have interpreted Boeing's statements regarding its commitment to safety in the same way before and after the DPA in January 2021.'" *Id.* at 17. And Defendants continue to criticize Plaintiffs' expert for failing to take into account the impact of the COVID-19 pandemic, beginning in March 2020, in his damages methodology. 23(f) Pet. at 17. But, since the district court shortened the Class Period to begin in January 2021, these pre-Class Period circumstances no longer have the potential to complicate issues of damages or loss causation.

Next, as Defendants note, they had argued below that Plaintiffs' methodology could not account for alleged inflation in Boeing's stock price created by the earliest alleged misstatements, which were repeated numerous times. *Id.* at 18. As they did

below, Defendants self-servingly mischaracterize Plaintiffs' materiality argument. In opposing Defendants' motion to dismiss, Plaintiffs argued that "the repetition of safety-related statements underscores their materiality," ECF-53 at 16, not that the statements somehow become increasingly material each time they were repeated. And Plaintiffs' argument was hardly "novel," as Defendants assert, 23(f) Pet. at 1; Plaintiffs cited numerous decisions directly supporting their materiality argument. ECF-53 at 15-16. Moreover, Defendants' contention that this is an unusual case in which repetition of the statements was the decisive factor in avoiding dismissal, 23(f) Pet. at 1, is completely unfounded; the rather obvious fact that safety was critically important to Boeing's investors throughout the Class Period was also based on many other factors, including direct admissions by Defendants. *Id.* at 7, 14-17. Plaintiffs never suggested the inflation in Boeing's stock price varied due to repetition, but even if it did (1) assessing such variation would be properly analyzed at the merits stage through expert loss causation analysis; and (2) as Mr. Coffman explained, such variation can be accounted for by the out-of-pocket method. *See* ECF-130-6-¶¶44-64.

In any event, Defendants' misleading argument is now largely mooted. Defendants stressed below that it "defies common sense" to suggest that the earliest statement in "September 2019" assuring investors about safety, "alone would have inflated Boeing's share price." ECF-115 at 20. This argument falls flat because the

court shortened the Class Period to begin in January 2021. Defendants' new suggestion that repetition *after* January 2021 may also have caused variation in inflation, 23(f) Pet. at 18, is baseless, and says nothing about the appropriateness of the damages model.

Next, Defendants make a superficial comparison between this matter and *BP*. Both cases involve a corrective event that could be called a "materialization of risk," a term describing fraud that (partially or fully) came to light through the occurrence of an adverse event. But, unlike this case, *BP* involved a unique damages methodology, premised on the unconventional assertion that investors would not have purchased BP stock at all if certain risks (which materialized with the Deepwater Horizon oil spill) had been disclosed. 800 F.3d at 689-90. From that premise, plaintiffs pursued a damages methodology that sought to broadly assess losses that were a consequence of owning BP stock, rather than those losses specifically attributable to artificial inflation in BP's stock price due to the fraud. *Id*. In other words, plaintiffs sought to recover based on the full price decline following the oil spill, not just the portion of that decline due to artificial inflation dissipating from the stock price. *Id.* In contrast, the standard out-of-pocket method that Plaintiffs rely on here only measures damages from inflation in the share price due to the fraud.

The holding in *BP* did not turn on the fact that the case involved a fraud being revealed through an adverse event, but on the specific unconventional damages method those plaintiffs pursued. *Id.* (original emphasis) ("[Plaintiffs'] theory hinges on a determination that each plaintiff would not have bought BP stock *at all* were it not for the alleged misrepresentations—a determination ... requiring individualized inquiry."). Courts recognize that *BP* was narrowly concerned with the unique damages methodology at issue, which the BP court "explicitly" stated "was different from an out-of-pocket damages measurement." *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 691-92 (D. Md. 2018).

Therefore, *BP* is inapplicable to this case because Plaintiffs here propose a standard out-of-pocket method, not the unique theory of damages sought by plaintiffs in *BP*. Defendants do not deny that the out-of-pocket method can be used in cases where the fraud was partially or fully revealed through adverse events. *See* ECF-115 at 21-24. When asked whether the out-of-pocket method is "inconsistent with plaintiffs' theory of liability," Defendants' expert responded: "I am not questioning the use of that formula." ECF-130-2 at 66:22-67:3. And, when asked if he believed that the out-of-pocket method cannot be used in scenarios involving a materialization

of risk, he confirmed this was not his opinion, stating: "No, absolutely not." *Id.* at 135:4-9.

Defendants nevertheless demand detail about how the change in inflation following the Alaska Airlines incident will be distinguished (*i.e.*, disaggregated) from other potential causes of that stock price decline. 23(f) Pet. at 20-21. But such disaggregation is a merits-based loss causation issue. *See Junge v. Geron Corp.*, 2022 WL 1002446, at *5-*9 (N.D. Cal. Apr. 2, 2022) (rejecting *BP* argument, holding that disaggregation of confounding causes of price decline following an adverse event is a merits-stage task); *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, 2023 WL 7285167, at *23 (E.D. Pa. Nov. 3, 2023) ("disaggregation … need not be established at this juncture"), *leave to appeal denied sub nom. Forsythe v. Teva Pharm. Indus. Ltd.*, 102 F.4th 152 (3d Cir. 2024). Even so, Mr. Coffman's rebuttal report describes how such disaggregation analysis could be conducted. ECF-130-6-¶¶33-37. Indeed, as Defendants' expert recognized, disaggregating various causes of stock declines is routinely performed at the merits stage. *See* ECF-130-2 at 137:4-21.

### D. This case does not present a question remotely similar to *Deloitte*

Defendants vaguely suggest that review is appropriate because of the ongoing appeal in *Deloitte*. If anything, that appeal highlights why Defendants' arguments

here are misplaced, by demonstrating the sort of unique facts required for *Comcast* to pose relevant questions in a fraud on the market securities case invoking the out-of-pocket damages methodology.

*Deloitte* concerns an alleged fraud concerning SCANA's nuclear energy project. A separate case against SCANA itself has already settled, leaving the case against Deloitte to proceed. Deloitte's work as auditor allegedly contributed to the fraud inflating SCANA's stock price. Thus, under *Comcast*, one could reasonably question whether measuring the inflation caused by the fraud as a whole fits with a theory of liability focused on Deloitte's specific role in that fraud. Regardless of whether that question is ultimately salient, it has no bearing on this case, which does not share any of *Deloitte*'s unique traits.[4]

### E. The class certification order will not effectively terminate the litigation

If upheld, the district court's certification ruling certainly would not be dispositive of the litigation. Fact discovery, as Defendants point out, is near completion. And Plaintiffs' expert's merits report—addressing the damages

---

4 While Defendants urge review in light of this Court's grant of review in *Deloitte*, which they contend involves "the same fundamental *Comcast* question" (Pet. 23(f) at 22), the Brief of Amicus Curiae The Securities Industry and Financial Markets Association ("SIFMA Brief") urges this Court to grant review because the appeal in *Deloitte* is distinguishable. SIFMA Brief at 3, 8.

methodology in more detail—has been served. Defendants will have every opportunity to contest liability and damages, as well as the link between them—*i.e.*, loss causation—with the benefit of a full record at summary judgment and/or trial. *See Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1024 (9th Cir. 2024) ("Given, moreover, that the Federal Rules contemplate that certification will be made '[a]t an early practicable time,' F.R.C.P. 23(c)(1)(A), we see no reason why plaintiffs may not, in appropriate circumstances, satisfy this burden through a proffer of a reliable method of obtaining evidence that will come into existence once a damages model is executed, even when the results are not yet available at the class certification stage.")

While Defendants raise generic complaints about settlement pressure, they do not—and could not—suggest that they lack the resources to continue litigating this case or to pay any recovery. *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 960 (9th Cir. 2005) (denying Rule 23(f) petition when there was no showing that the defendant "lacks the resources to defend [the] case to a conclusion and appeal if necessary or that doing so would 'run the risk of ruinous liability'"); *see also In re Acadia Healthcare Co., Inc.,* 2023 WL 3620955, at *4 (6th Cir. May 23, 2023) (quoting *Chamberlan* with approval and rejecting Acadia's conclusory argument regarding hardship in light of the company's resources as the largest national behavioral health-focused provider); *Arnold Chapman & Paldo Sign & Display Co. v.*

*Wagener Equities Inc.*, 747 F.3d 489, 491 (7th Cir. 2014) (rejecting claim of inordinate pressure to settle when defendants made no showing of their assets).

Where "the weakness of the district court's certification is less substantial (or insubstantial), a commensurately stronger showing on the other factors is necessary to support review." *Lienhart*, 255 F.3d at 145; *see Arnold Chapman*, 747 F.3d at 491 ("Even if the defendants could prove that they'll be forced to settle unless [this Court] reverse[s] the class certification order, they would have to demonstrate a significant probability that the order was erroneous."). For the reasons discussed above, Defendants have failed to demonstrate any weakness in the district court's decision. Nor have they shown that any of the other factors support review.

## IV. CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' 23(f) petition.

DATED: April 3, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
ANDREW S. LOVE

*s/Andrew S. Love*
ANDREW S. LOVE

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
alove@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
CHAD JOHNSON
JONATHAN ZWEIG
DESIREE CUMMINGS
420 Lexington Avenue, Suite 1832
New York, NY 10170
Telephone: 212/432-5100
chadj@rgrdlaw.com
jzweig@rgrdlaw.com
dcummings@rgrdlaw.com

LABATON KELLER SUCHAROW LLP
CAROL C. VILLEGAS
CHRISTINE M. FOX
JAKE BISSELL-LINSK
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
cvillegas@labaton.com
cfox@labaton.com
jbissell-linsk@labaton.com

*Lead Counsel for Lead Plaintiff*

COHEN MILSTEIN SELLERS
& TOLL PLLC
STEVEN J. TOLL
S. DOUGLAS BUNCH
1100 New York Avenue, N.W. Suite 800
Washington, D.C. 20005
Telephone: 202/408-4600
stoll@cohenmilstein.com
dbunch@cohenmilstein.com

*Liaison Counsel for Co-Lead Plaintiff State of Rhode Island Office of the General Treasurer, on behalf of The Employees' Retirement System of Rhode Island and the Class*

THE OFFICE OF CRAIG C. REILLY
CRAIG C. REILLY
209 Madison Street, Suite 501
Alexandria, VA 22314
Telephone: 703/549-5354
craig.reilly@ccreillylaw.com

*Liaison Counsel for Co-Lead Plaintiff Local #817 IBT Pension Fund and the Class*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the foregoing ANSWER IN OPPOSITION TO DEFENDANTS' PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f) complies with the type-volume limitation of Fed. R. App. P. 5(c) because the text of the brief comprises 5,195 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f), according to the word count provided by Microsoft Word 2010 word processing software. The undersigned further certifies that the foregoing document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 word processing software in Times New Roman, 14-point.

*s/Andrew S. Love*
ANDREW S. LOVE

4905-1875-2815.v1

# DECLARATION OF SERVICE

I, the undersigned, declare:

1. That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Francisco, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is Post Montgomery Center, One Montgomery Street, Suite 1800, San Francisco, California 94104.

2. I hereby certify that on April 3, 2025, I electronically filed the foregoing document: ANSWER IN OPPOSITION TO DEFENDANTS' PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f) with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

3. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 3, 2025, at San Francisco, California.

*s/Andrew S. Love*

ANDREW S. LOVE

4905-1875-2815.v1